UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ANILDA RODRIGUES,** on behalf of herself and all others similarly situated, | ) ) |
| **Plaintiff,** | ) |
| v. | ) ) |
| **BOSTON COLLEGE,** | ) |
| **Defendant.** | ) |

# COMPLAINT

Plaintiff, Anilda Rodrigues, ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Boston College ("BC"), and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys, and says:

## I. NATURE OF THE CASE

1. BC is a prestigious private university in Boston, Massachusetts, providing higher education in the arts, sciences, business, law, social work, medicine, nursing, education, and ministry. Plaintiff is a student at BC's Robert J. Morrissey College of Arts and Sciences.

2. On March 11, 2020, BC announced that it was canceling in-person classes due to the pandemic of the Coronavirus Disease 2019 ("COVID-19"). BC also canceled all hours of instruction that were to be held on March 12-18, 2020.

3. Plaintiff does not dispute that BC's decision to cease in-person instruction was warranted. Plaintiff asks merely to be refunded the money she spent for educational services that were not provided.

4. For the Spring 2020 semester, students like Plaintiff paid BC thousands of dollars in tuition for each "credit hour" of education (or for a semester of credit hours). By BC's published policy, a "credit hour" is "one hour of classroom or direct faculty instruction and a minimum of

two hours of out of class student work each week for approximately fifteen weeks ..." Students like Plaintiff pay tens of thousands of dollars in tuition alone for a semester of instruction.

5. Prior to its March 11, 2020 announcement that it would cease in-person instruction, BC permitted online education for only some courses in only some schools, and typically charged far less in tuition. For example, for the Fall 2020 semester, BC charged undergraduate students at the Robert J. Morrissey College of Arts and Sciences an average[1] of $1,968 per credit, but charged undergraduate students taking courses in its largely or partially online James A. Woods, S.J. College of Advancing Studies only $534 per credit hour – almost a 73% reduction.

6. For each credit hour in the Spring 2020 semester, students like Plaintiff received less than half of the promised academic hours of "classroom or direct faculty instruction."

7. Though BC could no longer provide the remaining hours of "contact time" instruction per credit hour, BC demanded that students pay the full tuition price.

8. Students like Plaintiff also received dramatically less than the promised hours of additional "hours of out of class student work" per credit hour.

9. Similarly, students like Plaintiff paid fees for services and access to facilities and equipment over the full semester. Though BC provided these services and facility/equipment access for only part of the semester, and could not provide them for the full semester, BC demanded that students pay fees for the entire semester.

10. While the effects of the COVID-19 crisis are shared by all individuals and institutions across the country, BC has failed to apportion the burden in an equitable manner or consistent with its obligations as an educational institution.

---

[1] Undergraduate tuition at BC for the Fall 2020 semester is $29,625. BC expects students to take an average of 15 credits per semester, and students failing to complete at least 15 credits per semester may be required to make up credits before being allowed to continue.

11.     BC is not entitled, by either contract or equitable principles, to pass the entire cost of its COVID-19 related closure to its students and their families. Plaintiff and the putative class are entitled to a partial refund of the tuition, fees, and other related payments for in-person educational services, access to facilities, and/or related opportunities for which they paid that BC did not provide.

12.     BC's online course policy and deeply discounted online course tuition reflects the inability of online classes to replicate the full academic opportunities and experiences of in-person instruction. Remote learning options cannot replace the comprehensive educational experience promised by BC. Access to facilities, materials, laboratories, faculty, student collaboration, and the opportunity for on campus living, school events, dialogue, feedback and critique are essential to the in-person educational experience.

13.     For example, before BC's March 11 announcement, all of Plaintiff's classes were taught as its "credit hour" policy dictates, with "classroom or direct faculty instruction" and additional hours of "out of class." Following BC's March 11 announcement in the Spring 2020 semester, instruction all of Plaintiff's classes were delivered only in a remote, online format. The science laboratory portions of one of Plaintiff's classes was canceled, and replaced with written self-study assignments. Instruction for Plaintiff's classes in the Summer 2020 terms were delivered only in pre-recorded online videos.

14.     Plaintiff and the putative class contracted and paid for an education, not course credits. They paid for the robust education and full experience of academic life on BC's campus; remote online learning cannot provide the same value as in-person education.

15.     As a result, BC has financially damaged Plaintiff and the putative class members. Plaintiff brings this suit because Plaintiff and the class members did not receive the full value of

the services for which they paid. They lost the benefit of their bargain and/or suffered out-of-pocket loss. They are entitled to recover compensatory damages, trebling where permitted, and attorneys' fees and costs.

16. Plaintiff seeks, for herself and the putative class members, a return of a prorated portion of the tuition, fees and other related costs, proportionate to the diminished value of online classes and the amount of time in the Spring 2020 and following semesters when BC ceased in-person classes, campus services and access to campus facilities, continuing through to such time as BC reinstates in-person classes.

## II.    JURISDICTION AND VENUE

17. The Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state than BC, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because BC is headquartered in this district.

19. The Court has personal jurisdiction over BC because BC is headquartered in this district, because many of the acts and transactions giving rise to this action occurred in this district, and because BC conducts substantial business in this district. Plaintiff resides in the City of Randolph, Massachusetts

## III.    PARTIES

20. Plaintiff Anilda Rodrigues is a citizen and resident of the Commonwealth of Massachusetts. Plaintiff has attended Boston College since the Fall 2018 semester. Plaintiff wash

charged approximately $28,390 in tuition for the 2020 Spring semester, minus amounts received through financial aid.

21.     Boston College is a private research university comprised of eight constituent schools. BC had a total enrollment of 9,758 undergraduate students and 4,801 graduate students for the 2019-2020 academic year. As of May 31, 2019, BC reported it had an endowment of $2.5 billion.

22.     BC was eligible to receive federal stimulus funding under the CARES Act, which provides for approximately $14 billion for colleges and universities based on enrollment numbers in order to mitigate the financial impact of the COVID-19 crisis on both institutions and students. BC applied for CARES Act funding and received approximately $3.22 million for distribution to students. As of August 2020, BC distributed grants to eligible students whose family contribution toward educational expenses was $0 (for graduate students) or $10,000 or less (for undergraduate students).

## IV.     FACTUAL ALLEGATIONS

**A.     Contract Terms**

23.     Plaintiff and Class members entered into a contract with BC whereby, in exchange for the payment of tuition, fees and other related costs, BC would provide an agreed-upon number of classes through in-person instruction and access to physical resources and school facilities such as libraries, laboratories, and classrooms.

24.     For each credit hour, BC promised to provide "hour of classroom or direct faculty instruction and a minimum of two hours of out of class student work each week," for the academic

semester."[2]

25. BC also agreed to provide instruction that was accredited by the New England Commission of Higher Education.

26. Plaintiff accepted BC's offer.

27. Plaintiff substantially performed its contractual obligations. BC did not.

**B.   Closure of Campus and Suspension of In-Person Education**

28. On March 11, 2020, BC announced it was canceling all in-person classes and effectively closed its campus. BC also canceled all hours of instruction that were to be held on March 12-18, 2020.

29. While BC's decision to close campus and end in-person classes was warranted by circumstances, it effectively breached or terminated the contract BC had with each and every student and tuition provider, who paid for the opportunity to participate fully in the academic life on the BC campus.

30. Though all in-person instruction ended on March 11, 2020, some classes were taught in an online format beginning March 19, 2020. Even students with concentrations in areas where in-person instruction is especially crucial (such as music, theatre, and the sciences), BC provided either no instruction or only remote, online instruction.

31. As a result of the closure of BC's campuses and facilities, BC has failed to deliver the educational services, facilities, access and/or opportunities for which Plaintiff and the putative class contracted and paid, either directly or through a third-party on their behalf.

32. BC subsequently decided to offer all of its Summer 2020 courses online, and to

---

[2]   Boston College Credit Hour Compliance, available at https://www.bc.edu/bc-web/academics/sites/provost/documents-and-reports/credithrcomp.html.

cancel its science laboratory classes.

33. Though Plaintiff and members of the Class paid BC tuition in exchange for a full semester of in-person education, BC ceased to provide the in-person education it promised, and thus has failed to uphold its side of the agreement. Nonetheless, BC insists that students uphold their side of the agreement and refuses to refund tuition and related expenses.

34. In so doing, BC is attempting to replace the irreplaceable – on-campus life at an elite university – with "virtual learning" via online classes, and is attempting to pass off this substitute educational experience as the same as or just as good as full participation in the university's academic life.

35. Plaintiff and members of the Class paid BC tuition in reliance on its promise of teaching a certain number of courses in an in-person course format and with in-person facility access. Plaintiff did not choose to attend and/or pay tuition for an online institution of higher learning, but instead chose to attend BC's institution and enroll on an in-person basis.

C. **Inferiority of Online Educational Experience**

36. At least one academic study found that "[o]nline courses do less to promote academic success than do in person courses." The study found that:

    a) Taking a course online reduced student achievement in that course by .44 points on the traditional four-point grading scale, a full one-third of a standard deviation;

    b) Specifically, students taking the in-person course earned roughly a B- (2.8 GPA) versus a C (2.4 GPA) for students taking an online version of the same course;

    c) Taking a course online also reduces future grades by 0.42 points for courses

    taken in the same subject area in the following semester; and

  d) Taking an online course reduced the probability of the student remaining enrolled in the university a year later by over ten percentage points.

Eric P. Bettinger *et al., Virtual Classrooms: How Online College Courses Affect Student Success*, AMERICAN ECONOMIC REVIEW, Vol. 107, No. 9, p. 2857.

37. The move to online-only classes deprived students of the opportunity to benefit from a wide variety of academic and student events, on-campus entertainment, facilities, and athletic programs, which provided considerable value to Plaintiff and the Class members.

38. The online learning options BC offered for the Spring 2020 and Summer 2020 semesters, though consistent with safety measures, cannot provide the academic and collegiate experience BC extols.

**D. Lower Tuition for Online Education**

39. In-person education is worth more than online education.

40. Accordingly, the tuition and fees for in-person instruction at BC are higher than tuition and fees for its own online classes and for other online institutions. Such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

  a) Face to face interaction with professors, mentors, and peers;

  b) Access to facilities such as libraries, laboratories, computer labs, and study rooms;

  c) Student governance and student unions;

  d) Extra-curricular activities, groups, intramural sports, etc.;

  e)  Student art, cultures, and other activities;

  f)  Social development and independence;

  g)  Hands on learning and experimentation; and

  h)  Networking and mentorship opportunities.

41. The fact that BC students paid a higher price for an in-person education than they would have paid for an online education is illustrated by the vast price difference in BC's in-person, on-campus classes versus BC largely online classes.

42. For example, for the Fall 2020 semester, BC charged undergraduate students at the Robert J. Morrissey College of Arts and Sciences an average[3] of $1,968 per credit, but charged undergraduate students taking courses in its largely or partially online James A. Woods, S.J. College of Advancing Studies only $534 per credit hour – almost a 73% reduction.

**E. Damages**

43. Through this lawsuit, Plaintiff seeks for herself and Class members BC's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and campus services ceased being provided, accounting for the diminished value of educational opportunities, the reduced hours of instruction, as well as for each subsequent semester and continuing until BC resumes in-person classes. Plaintiff seeks return of these amounts on behalf of herself and the Class as defined below.

44. Plaintiff also seeks damages relating to BC's passing off an online, "virtual" college

---

[3] Undergraduate tuition at BC for the Fall 2020 semester is $29,625. BC expects students to take an average of 15 credits per semester, and students failing to complete at least 15 credits per semester may be required to make up credits before being allowed to continue.

experience as similar in kind to full immersion in the academic life of a college campus.

## V.   CLASS ACTION ALLEGATIONS

45.   Plaintiff seeks to represent a class defined as:

> Any person who paid or caused to be paid tuition and/or fees to attend Boston College when classes and/or coursework were limited in whole or in part to online attendance as a result of or in connection with COVID-19.

Specifically excluded from the Class are BC, BC's officers, directors, trustees and agents, the judge assigned to this action, and any member of the judge's immediate family.

46.   Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

47.   **Numerosity.** The members of the Class are geographically dispersed and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiff at this time, the true number of Class members is known by BC and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of BC and third-party retailers and vendors.

48.   **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a)   whether BC accepted money from Class members in exchange for the promise to provide services;

      b)      whether BC provided the services for which Class members contracted;

      c)      whether Class members are entitled to a refund for that portion of the tuition and fees that was contracted for services that BC did not provide; and

      d)      whether BC is liable to Plaintiff and the Class for unjust enrichment.

49.    **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through BC's wrongful conduct as set forth herein. Further, there are no defenses available to BC that are unique to Plaintiff.

50.    **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

51.    **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against BC. It would, thus, be virtually impossible for the Class on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management

difficulties under the circumstances.

52. In the alternative, the Class may also be certified because:

   a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the BC; and/or

   b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

   c) BC has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
**Breach of Contract**

53. Plaintiff restates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as if fully set forth herein.

54. Plaintiff brings this claim individually and on behalf of the members of the Class against BC.

55. Through its student policies, the admission agreement, and payment of tuition and fees, Plaintiff and each member of the Class entered into a binding contract with BC.

56. As part of the contract, and in exchange for the aforementioned consideration, BC promised to provide in-person education services, including in-person instruction and access to

on-campus resources, for the full duration of the Spring 2020 semester, and continuing into the 2020-2021 academic year.

57. Plaintiff and Class members fulfilled their end of the bargain when they paid monies due for tuition, fees, and related expenses.

58. BC has failed to provide the contracted-for services but has retained tuition monies paid by Plaintiff and the Class, and refuses to issue a corresponding tuition adjustment.

59. Plaintiff and members of the Class have suffered damage as a direct and proximate result of BC's breach, including but not limited to deprivation of the education, experience, and services that they were promised and for which they have already paid.

60. As a direct and proximate result of BC's breach, Plaintiff and the Class are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by BC for services that BC has failed to deliver.

## COUNT II
### Unjust Enrichment

61. Plaintiff restates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as if fully set forth herein.

62. Plaintiff brings this claim individually and on behalf of the members of the Class against BC, and in the alternative to Count I.

63. Plaintiff and members of the Class conferred a benefit on BC in the form of monies paid for tuition, fees, and related expenses in exchange for certain service and promises. This tuition was intended to cover in-person educational services for the academic semester.

64. BC voluntarily accepted and retained this benefit by accepting payment.

65. BC has retained this benefit even though it ceased providing the full education,

experience, and services for which the tuition and fees were collected.

66.     The online education services BC substituted for the in-person education for which Plaintiff and class members paid has a substantially lesser value, but BC has nonetheless retained full payment.

67.     It would be unjust and inequitable for BC to retain benefits in excess of the services it provided, and BC should be required to disgorge any tuition, fees and related expenses that exceed the value of online education.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against BC as follows:

A.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.     For actual, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

D.     For prejudgment interest on all amounts awarded;

E.     For an order of restitution and all other forms of equitable monetary relief;

F.     For injunctive and declaratory relief as the Court may deem proper;

G.     For an order awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit; and

H.     All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: September 8, 2020

Respectfully submitted,

ANILDA RODRIGUES, *on behalf of herself and all others similarly situated.*

By: */s/Christopher M. Lefebvre, Esq.*
Consumer & Family Law Center of
Claude F. Lefebvre | Christopher M. Lefebvre, PC
PO Box 479 • Pawtucket • 02862
Tel: (401) 728-6060 • Fax: (401) 728-6534
chris@lefebvrelaw.com
BBO# 629056

James A. Francis*
John Soumilas*
David A. Searles*
Edward H. Skipton*
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com
eskipton@consumerlawfirm.com

**Pro hac vice* forthcoming

*Attorneys for Plaintiff*