**United States District Court**
**District of Massachusetts**

```
_____
                               )
Anilda Rodrigues, et al.,      )
                               )
         Plaintiffs,           )
                               )       Civil Action No.
         v.                    )       20-CV-11662-NMG
                               )
Boston College,                )
                               )
         Defendant.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiffs Anilda Rodrigues and Sarah Talbott bring suit on behalf of themselves and all similarly situated persons (collectively, "plaintiffs") against defendant Boston College ("defendant" or "BC") seeking damages for a portion of tuition and fees collected by BC during the academic semesters altered by the COVID-19 pandemic.  Plaintiffs contend that they should not have had to pay full tuition and fees for the remote learning experience BC offered during those semesters.

BC filed a motion for partial summary judgment in which it contends it is entitled to judgment as to plaintiffs' claims regarding the Spring, 2020 academic semester (Docket No. 86).  In August, 2023, the Commonwealth of Massachusetts enacted legislation that granted institutions of higher learning

-1-

immunity from civil liability for claims arising out of tuition and fees paid for that specific semester.  Plaintiffs rejoin that the legislation is unconstitutional.  The Court disagrees and concludes that partial summary judgment in favor of defendant is warranted.

I.   **Background**

In March, 2020, Massachusetts Governor Charlie Baker declared a public health emergency in the Commonwealth due to the outbreak of COVID-19 and prohibited gatherings of more than ten people.  BC, like other institutions at the university level, cancelled in-person classes and transitioned to remote instruction.

Plaintiff Anilda Rodrigues initially brought this action in September, 2020.  An amended complaint, in which plaintiff Sarah Talbott joined, was filed in December, 2020.  Plaintiffs allege that BC breached its contractual obligations to its students and was unjustly enriched when it continued to require students to pay full tuition prices after the change to remote instruction. They acknowledge that the transition was warranted but insist that BC should reimburse students, at least in part, for the diminished value of an online educational experience.  While plaintiffs seek relief related to the 2020 Spring, Summer and Fall terms and the 2021 Spring term, defendant's motion

-2-

addresses only plaintiffs' claims relative to the Spring, 2020 semester.[1]

## II. __Legal Standard__

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477

---

[1] In its memorandum, BC indicates it will later move for summary judgment as to the post-Spring, 2020, claims.

U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

## III. **Application**

### A. **Section 80(b)**

BC contends that recent legislation bars plaintiffs' claims relating to the Spring, 2020 semester.  In August, 2023, Massachusetts Governor Maura Healey signed legislation into law that shields public and private colleges and universities in this State from civil liability for any damages of equitable monetary relief for claims that

> arise[] out of or in connection with tuition or fees
> paid to the institution of higher education for the
> spring academic term of 2020 [so long as the
> institution] offered online and otherwise remote
> learning options that allowed students to complete the
> coursework . . . .

Mass. St, c. 28 § 80(b) ("Section 80(b)").  Institutions are not immune if "the damage alleged was caused by an act or omission .

-4-

. . that was malicious or in bad faith." Id. § 80(c) ("Section 80(c)").

Plaintiffs acknowledge that Section 80(b) is designed to immunize BC for any liability arising from the Spring, 2020 semester and to apply retroactively.  Plaintiffs, however, challenge the constitutionality of the statute on the grounds that 1) its retroactive application violates their due process rights under the Massachusetts and United States Constitutions and 2) it violates the Contracts Clause of the United States Constitution by substantially impairing their contractual right to in-person instruction.  The Court will consider each of those arguments in turn.

## B. Retroactivity

Plaintiffs insist that the statute's retroactive application violates their due process rights.  Both parties agree that Section 80(b) applies retroactively.

When a statute applies retroactively in Massachusetts,

> [o]nly those statutes which, on a balancing of opposing considerations, are deemed to be unreasonable, are held to be unconstitutional.

American Mfrs. Mut. Ins. Co. v. Commissioner of Ins., 374 Mass. 181, 189-90 (1978).  Courts apply every rational presumption in favor of statutory constitutionality and the

challenging party bears a heavy burden to prove otherwise.
Sliney v. Previte, 473 Mass. 283, 291 (2015).

To determine whether the statute is reasonable, courts
consider three factors:

> (1) the nature of the public interest which motivated
> the Legislature to enact the statute; (2) the nature
> of the rights affected; and (3) the extent or scope of
> the statutory effect or impact.

Koe v. Commissioner of Probation, 478 Mass. 12, 17 (2017).
The Court will consider each factor in sequence.

### 1. Nature of the Public Interest

The text of Section 80(b) does not pronounce any specific
purpose for the act.  Defendant suggests that the statute is,
among other things, designed to encourage institutions of higher
education to respond appropriately to future public health
emergencies without fear of being sued.

Plaintiffs reply that the focus of the Court's inquiry must
be on whether the retroactive application of the statute
furthers a public interest.  They assert that public health and
safety is not advanced by the retroactive application of Section
80(b) in situations such as this one.  While prospective
legislation that immunizes institutions could promote wellbeing,
public safety is not promoted by the retroactive abrogation of
private contractual rights.

-6-

Plaintiffs disregard the role of incentives and the concept of deterrence.  Universities, just as other entities or persons, adapt their behavior based on past outcomes.  The Legislature may have reasoned that colleges and universities are more likely to respond appropriately to future health crises and comply with federal, state and local guidance if they believe that their choices will not expose them to legal liability.  It makes sense that the Legislature would not want institutions to be penalized for responses made in good faith.

Plaintiffs also insist that Section 80(b) furthers the interest of "deep-pocketed" private institutions rather than the public.  That argument will be soundly rejected.  The statute applies uniformly to public and private institutions of higher education.  Even if the statute disproportionately benefits private actors, that does not mean it was enacted contrary to the public interest.  The Commonwealth greatly benefits from private institutions of higher education located within its borders and, furthermore, more students attend public universities than private ones in the State.  Simply put, the statute cannot be considered special interest legislation in which "a small number of [institutions] were singled out from the larger group." Energy Rsrvs. Grp. v. Kan. Power & Light Co., 459 U.S. 400, 417 n.25 (1983).

-7-

Defendant alternatively suggests that retroactive legislation may reasonably further a public interest by abrogating disruptive lawsuits.  That argument may also have merit. See Hughes v. Tobacco Inst., Inc., 278 F.3d 417, 425 (5th Cir. 2001) (finding act of Texas's legislature did not violate due process rights because it had rational objective of "abrogat[ing] frivolous lawsuits").

The Court is satisfied that the Legislature reasonably promoted an important public interest in enacting Section 80(b). The fact that the statute is designed to benefit the public at large rather than to avoid an educational obligation is further proof of its reasonableness. American Mfrs., 374 Mass. at 193.

### 2. **Nature of the Rights Affected**

Plaintiffs argue that the newly enacted statute impairs a contractual agreement between BC and its students to provide in-person education and campus access for the Spring, 2020 semester in exchange for tuition and fees.  Purportedly, that contractual agreement was not only impaired but "completely and permanently abrogated" by Section 80(b).

While this Court has long recognized that there exists "a contractual relationship between the school and the student" at private institutions of higher education, Omori v. Brandeis Univ., 533 F. Supp. 3d 49, 54-55 (D. Mass. 2021) (citation

-8-

omitted), it is not obvious that such a contract guarantees in-person instruction.

Some sessions of this Court have differed on whether such a contractual right incorporates a promise of in-person instruction.  Their analyses have ultimately depended upon the handbooks, guidelines, and catalogs of the institution at issue. Compare Chong v. Northeastern Univ., 2021 WL 1857341, at *5 (D. Mass. May 10, 2021) (allowing motion for summary judgment because language in Northeastern University's handbook could not lead students reasonably to expect in-person instruction), with Omori, 635 F. Supp. 3d at 55 (denying motion to dismiss where Brandeis University's financial responsibility agreement did not reserve as much discretion).  BC's 2019-2020 catalog stated that the institution reserved the right

> in its sole judgment to make changes of any nature . .
> . , [including] the rescheduling of classes . . . ,
> cancelling of scheduled classes and other academic
> activities, and requiring or affording alternatives
> for scheduled classes or other academic activities.

(Emphases added.)  When analyzing the nature of the rights affected, a court must determine

> how great is the change viewed in the light of the
> reasonable expectations of the parties when the
> contract was entered into.

American Mfrs., 374 Mass. at 194 (citation omitted).  While it was reasonable for students to assume their tuition and fees

provided a right to in-person instruction, the text of BC's catalog suggests that students were on notice that the nature of their instruction could vary.  BC has a colorable argument that it maintained sole discretion to suspend in-person instruction if it deems it necessary.

Even if plaintiffs had a strong breach of contract claim, their contention that they had no reason to believe the contract was "subject to legislative adjustment [because] the state has never maintained the authority" to alter contractual rights between students and a private university is unavailing.  It is well settled that

> the State reserves police powers that may in a
> particular predicament enable it to alter or abrogate
> even conventional contractual rights.

Id. at 191 (citation omitted).

### 3. Scope of Statutory Effect

The third factor requires the Court to consider the duration of the legislative response and whether "the statute is narrowly drawn to treat the problem perceived by the Legislature." Id. at 196.

Section 80(b) affords civil immunity only for the Spring semester of 2020 and, under Section 80(c), does not immunize institutions if the alleged damage was the result of an act or omission "that was malicious or in bad faith."  The fact that

-10-

plaintiffs' claims for the three semesters following the Spring of 2020 are left unimpaired by the statute, despite the similarity of those claims, is evidence of its narrow scope. While Section 80(b) affects dozens of institutions of higher education, the Court is aware of only a small collection of cases that would have been affected by the legislation. See Leibovich v. Antonellis, 410 Mass. 568, 579 (1991) (explaining that because "the statute will affect a relatively small number of pending cases, it is highly unlikely that society's exposure to the threat of financial ruin will be intolerable" (cleaned up)). The scope of Section 80(b) is limited in accordance with the public interest it promotes.

### 4. Summary

BC's transition to remote learning resulted in a significant disruption, given the reasonable expectations of its students. Ultimately, however, their potential contractual rights "must be balanced against the public interest that the act seeks to protect and advance." Sliney, 473 Mass. at 294.

The Legislature was entitled to determine that the public had a significant interest in protecting institutions of higher education from legal liability arising from their effort to adhere to state and local health guidance and to promote what they were informed to be necessary regulations. The Legislature

limited the scope of the protection to the Spring, 2020 semester and to institutions that acted in good faith.  The retroactive nature of Section 80(b) does not implicate due process concerns.

**C. Contracts Clause**

The Contracts Clause of the United States Constitution provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I., § 10, cl. 1.  When considering a statutory challenge under the Contracts Clause, a court must determine 1) whether the law substantially impairs a contractual relationship and 2) whether that impairment is "reasonable and necessary to serve an important government purpose." In re Fin. Oversight & Mgmt. Bd., 979 F.3d 10, 16 (1st Cir. 2020) (citation omitted).  Substantial deference is afforded to state action that impairs private contractual rights. United Auto., Aerospace, Agr. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 44 (1st Cir. 2011).

There is no need to provide a separate analysis in response to plaintiffs' Contracts Clause argument. See In re Liquidation of Am. Mut. Liab. Ins. Co., 434 Mass. 272, 282 n.11 (2001) (noting courts apply the same test of reasonableness under the Contracts Clause and cognate state and federal due process clauses).  Even if Section 80(b) substantially impairs

plaintiffs' contractual rights, that impairment is reasonable given the important government interests discussed _supra_.

### ORDER

For the reasons set forth above, defendant's motion for partial summary judgment (Docket No. 86) is **ALLOWED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  January 8, 2024

-13-