**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ANILDA RODRIGUES and SARAH TALBOTT, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 1:20-cv-11662-NMG |
| v. | |
| BOSTON COLLEGE, | |
| Defendant. | |

**DEFENDANT BOSTON COLLEGE'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE ENTRY OF
JUDGMENT ON PLAINTIFFS' SPRING 2020 CLAIMS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 3

    A.    Plaintiffs Enrolled At Boston College And Received Full And Partial Financial Aid. ................................................................. 3

    B.    Boston College Reserved The Right To Change Its Programs. ................. 3

    C.    The University's Spring 2020 Response To The COVID-19 Pandemic. ................................................................................................ 4

    D.    Boston College Communicated Its Plans For Future Terms To Students. ............................................................................................ 4

        1.    Summer 2020 Session ................................................................. 5

        2.    Fall 2020 Session ......................................................................... 5

        3.    Spring 2021 Session ..................................................................... 7

PROCEDURAL HISTORY .................................................................................................... 8

    A.    Plaintiffs' Complaint. .................................................................... 8

    B.    Court's Grant Of Partial Summary Judgment As To Spring 2020 Claims. ........................................................................................... 8

    C.    First Circuit's *Dutra* Decision. .................................................. 9

    D.    Plaintiffs' Attempt To Relitigate This Case In Massachusetts State Court. ..................................................................................... 9

APPLICABLE LEGAL STANDARDS .................................................................................. 10

ARGUMENT ...................................................................................................................... 11

    I.    The Court Should Grant Boston College Summary Judgment As To Plaintiffs' Remaining Contract And Unjust Enrichment Claims. ........................ 12

        A.    Remaining Contract Claims. ...................................................... 12

            1.    Summer 2020 .......................................................................... 13

            2.    Fall 2020 ................................................................................. 14

            3.    Spring 2021 ............................................................................. 15

        B.    Remaining Unjust Enrichment Claims. ...................................... 16

    II.    If The Court Does Not Grant Boston College Summary Judgment, It Should Grant Final Judgment As To The Spring 2020 Claims Under Rule 54(b). ....................................................................................... 17

        A.    The Court's Ruling As To The Spring 2020 Claims Is Final. ................. 18

**TABLE OF CONTENTS**

**Page**

B.    There Is No Just Reason To Delay Entry Of Final Judgment As To
The Spring 2020 Claims If The Court Does Not Grant Boston
College Summary Judgment As To All Remaining Claims. ................... 18

CONCLUSION............................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allis-Chalmers Corp. v. Philadelphia Electric Co.*,
    521 F.2d 360 (3d Cir. 1975) ................................................................... 19

*Barkhordar v. President & Fellows of Harvard Coll.*,
    2022 WL 6058201 (D. Mass. Mar. 1, 2022)............................................ 12

*Barkhordar v. President & Fellows of Harvard Coll.*,
    544 F. Supp. 3d 203 (D. Mass. 2021) .......................................... 11, 12, 16

*Chong v. Ne. Univ.*,
    2021 WL 1857341 (D. Mass. May 10, 2021) .................................... 11, 13

*Chong v. Ne. Univ.*,
    494 F. Supp. 3d 24 (D. Mass. 2020) ....................................................... 16

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
    446 U.S. 1 (1980)................................................................................... 18

*Danny B. ex. Rel. Elliott v. Raimondo*,
    784 F.3d 825 (1st Cir. 2015)................................................................... 10

*Darr v. Muratore*,
    8 F.3d 854 (1st Cir. 1993)....................................................................... 19

*Dutra v. Trs. of Boston Univ.*,
    96 F.4th 15 (1st Cir. 2024)........................................................................ 9

*Dutra v. Trs. of Boston Univ.*,
    No. 23-01385 (1st Cir. Apr. 2, 2024)........................................................ 9

*Dutra v. Trs. of Boston Univ.*,
    No. 23-01385 (1st Cir. Mar. 26, 2024) ..................................................... 9

*Dutra v. Trs. of Boston Univ.*,
    No. 23-01385 (1st Cir. May 22, 2024) ...................................................... 9

*Free Speech Coalition, Inc. v. AG of the United States*,
    677 F.3d 519 (3d Cir. 2012) ................................................................... 20

*Gabriel v. Superstation Media, Inc.*,
    2015 WL 1648723 (D. Mass. Apr. 14, 2015) .......................................... 11

*Gelboim v. Bank of Am. Corp.*,
    574 U.S. 405 (2015)................................................................................ 17

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Gibson Found., Inc. v. Norris,*
    2022 WL 16636247 (D. Mass. Aug. 26, 2022) ..................................................... 18

*Goldberg v. Pace Univ.,*
    535 F. Supp. 3d 180 (S.D.N.Y. 2021) ................................................................ 17

*Havlik v. Johnson & Wales Univ.,*
    509 F.3d 25 (1st Cir. 2007) .............................................................................. 10

*Hutchinson v. Univ. of Saint Joseph,*
    2022 WL 19339 (D. Conn. Jan. 3, 2022) ............................................................ 17

*In re Bos. Univ. COVID-19 Refund Litig.,*
    511 F. Supp. 3d 20 (D. Mass. 2021) ................................................................. 11

*In re Brown,*
    951 F.2d 564 (3d Cir. 1991) ............................................................................. 20

*In re Columbia Tuition Refund Action,*
    523 F. Supp. 3d 414 (S.D.N.Y. 2021) ............................................................... 17

*In re Univ. of S. California Tuition & Fees COVID-19 Refund Litig.,*
    2021 WL 3560783 (C.D. Cal. Aug. 6, 2021) ....................................................... 11

*Maldonado-Denis v. Castillo-Rodriguez,*
    23 F.3d 576 (1st Cir. 1994) ......................................................................... 18, 19

*Metro. Life. Ins. Co. v. Cotter,*
    464 Mass. 623 (2013) ................................................................................. 11, 16

*Omori v. Brandeis Univ.,*
    533 F. Supp. 3d 49 (D. Mass. 2021) ............................................................ 10, 11

*Omori v. Brandeis Univ.,*
    635 F. Supp. 3d 47 (D. Mass. 2022) ............................................................ 10, 16

*Schmidhauser et al., v. Boston College and Tufts University,*
    No. 2484CV01591 (Mass. Super. Ct. June 14, 2024) ............................................ 9

*Shaulis v. Nordstrom, Inc.,*
    865 F.3d 1 (1st Cir. 2017) ................................................................................ 16

*SiOnyx, LLC v. Hamamatsu Photonics K.K.,*
    332 F. Supp. 3d 446 (D. Mass. 2018) ................................................................ 16

*Spiegel v. Trustees of Tufts Coll.,*
    843 F.2d 38 (1st Cir. 1988) ......................................................................... 18, 19

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Walker v. President and Fellows of Harvard Coll.*,
  82 F. Supp. 3d 524 (D. Mass. 2014) ............................................................................ 10

**Statutes**

Mass. St, c. 28 § 80(b) ........................................................................................................ 8

Mass. St, c. 28 § 80(c) ........................................................................................................ 8

**Rules**

Fed. R. Civ. P. 54(b) .......................................................................................................... 18

Fed. R. Civ. P. 56(a) .......................................................................................................... 10

Defendant Boston College[1] respectfully submits this Memorandum in support of its
Motion for Summary Judgment as to Plaintiffs' remaining claims under Federal Rule of Civil
Procedure 56 and Local Rule 56.1, or, in the alternative, if the Court declines to grant the Motion
for Summary Judgment, for entry of judgment as to Plaintiffs' Spring 2020 claims under Federal
Rule of Civil Procedure 54(b).

## INTRODUCTION

Courts in this district and throughout the country have struggled with the merits of claims
by students seeking tuition refunds based on universities' move to remote instruction in Spring
2020 in response to the COVID-19 pandemic.  The Legislature resolved that issue for
Massachusetts by precluding such claims, and this Court accordingly granted Boston College
summary judgment as to the Spring 2020-based claims brought by Plaintiffs here.

There is no controversy, however, about the validity of claims for tuition refunds *after*
Spring 2020, when Boston College students were well aware there was no guarantee of in-person
education.  Certainly, that is the case when, as here, Plaintiffs were definitively told well in
advance that some or all of their instruction would be remote.  Plaintiffs assert that they had a
reasonable expectation of in-person education in Summer 2020, Fall 2020, and Spring 2021.  But
as explained in detail below, the undisputed facts foreclose that argument:

- Plaintiffs were told in April 2020 that the first summer session would be remote, yet
  Plaintiff Talbott chose to enroll rather than exercise her option to obtain a tuition
  refund.  Students were told in May 2020 that the second summer session would be
  remote, and Plaintiff Rodrigues chose to remain enrolled as well.

---

[1] The Trustees of Boston College is the legal entity comprising Boston College, and is the
proper party to this litigation.

- Plaintiff Rodrigues, an undergraduate, was told in June 2020 that classes would be a mix of in-person, remote, and hybrid in the Fall 2020 semester. She decided to enroll anyway, and her Fall 2020 semester was exactly as promised: three in-person classes, one remote class, and one hybrid class.

- Plaintiff Talbott, a graduate student in the School of Social Work, was told in June 2020 by the School's administration that Fall 2020 instruction would be fully remote. She decided to enroll anyway.

- Talbott was similarly told by the School of Social Work in October 2020 that Spring 2021 classes would be remote. She decided to enroll anyway.

- Rodrigues was told in October 2020 that Spring 2021 classes would again be a mix of modalities. Rodrigues decided to enroll, and took both in-person and remote classes, just as she was promised.

Both Plaintiffs' contract and unjust-enrichment claims are predicated on what they claim to be their reasonable expectations in light of communications from the University. In light of the undisputed facts described above, Plaintiffs could not have had a reasonable expectation of receiving anything other than exactly what they got. Plaintiffs' remaining claims thus fail as a matter of law on the undisputed facts, and summary judgment for Boston College is required.

Summary judgment is warranted now not only because Plaintiffs' remaining claims fail as a matter of law on the undisputed facts, but because of Plaintiffs' inappropriate litigation conduct. This Court granted Boston College partial summary judgment as to Plaintiffs' Spring 2020 claims based on Section 80 of the Legislature's most recent budget, rejecting Plaintiffs' retroactivity challenge to that legislation. The First Circuit has now likewise rejected that retroactivity argument. But on June 14, 2024, Plaintiffs—represented by the same counsel as in

this case—filed a new suit against Boston College in Massachusetts state court, seeking a declaration that Section 80 is unconstitutionally retroactive. A final judgment in this case as to all claims would definitively preclude that wasteful—indeed, frivolous—litigation. And even if the Court were to decline granting summary judgment as to Plaintiffs' remaining claims, it should enter a Rule 54(b) judgment as to Plaintiffs' Spring 2020 claims to foreclose any additional litigation on that already-litigated and settled issue.

## FACTUAL BACKGROUND

On January 9, 2023, this Court granted Boston College partial summary judgment as to Plaintiffs' Spring 2020 breach-of-contract and unjust enrichment claims. ECF No. 96. Boston College now moves for summary judgment as to Plaintiffs' remaining claims—i.e., that Boston College breached its contract with them, and was unjustly enriched, by offering remote education for some or all of Plaintiffs' classes during the Summer 2020, Fall 2020, and Spring 2021 sessions. The following undisputed facts—further detailed in the simultaneously filed Statement of Undisputed Facts ("SUF")—are relevant to resolving that question.

### A.    Plaintiffs Enrolled At Boston College And Received Full And Partial Financial Aid.

Plaintiff Anilda Rodrigues was an undergraduate at Boston College from Fall 2018 to Spring 2022, when she graduated. SUF ¶ 1. She received a full tuition scholarship funded by Boston College. SUF ¶ 2. Sarah Talbott was a master's student at the School of Social Work from Spring 2020 to Spring 2021, when she graduated. SUF ¶ 4. Boston College awarded Talbott partial scholarships for Summer 2020 and Fall 2020. SUF ¶ 5.

### B.    Boston College Reserved The Right To Change Its Programs.

Plaintiffs agree that the Boston College University Catalog (the "Catalog") is a part of their contract with Boston College. SUF ¶ 6. The 2019-2020 Catalog sets out, among other

- 3 -

things, degree requirements, fees, policies, and course offerings.  That Catalog also expressly

recognizes Boston College's substantial discretion to change course offerings, class format, and

attendance policies as circumstances dictate.  Specifically, it provides that Boston College:

> reserves the right in its sole judgment to make changes of any nature
> in its program, calendar, or academic schedule whenever it is
> deemed necessary or desirable, including changes in course content,
> the rescheduling of classes with or without extending the academic
> term, cancelling of scheduled classes and other academic activities,
> and requiring or affording alternatives for scheduled classes or other
> academic activities in any such case giving such notice thereof as is
> reasonably practicable under the circumstances.

SUF ¶ 7.  It also "reserve[s] [Boston College's] right to change the tuition rates and to make

additional changes [ ] whenever such action is deemed necessary."  *Id.*  The 2020-2021 Catalog

contains a materially identical provision.  SUF ¶ 8.

### C.    The University's Spring 2020 Response To The COVID-19 Pandemic.

"In March, 2020, Massachusetts Governor Charlie Baker declared a public health

emergency in the Commonwealth due to the outbreak of COVID-19 and prohibited gatherings of

more than ten people."  ECF No. 96 at 2.  Boston College, "like other institutions at the

university level, cancelled in-person classes and transitioned to remote instruction."  *Id.*  This

Court granted Boston College partial summary judgment as to Plaintiffs' claims challenging

Boston College's actions in Spring 2020.  *See generally id.*

### D.    Boston College Communicated Its Plans For Future Terms To Students.

After Spring 2020, Boston College provided different learning modalities as the public

health environment changed.  In the months following the onset of the pandemic, Boston College

regularly updated students on plans for future terms—and alerted them to the fact that some or

all classes would be online well in advance of deadlines (published in the University Catalog) to

drop courses and either withdraw or take a leave of absence.  Tuition and fees are cancelled for

students who timely withdraw or take a leave of absence, resulting in a 100% refund for the relevant term.

### 1.    Summer 2020 Session

On April 15, 2020, Boston College notified students that its first summer session would be virtual; students had until after classes began on May 13 to drop courses and receive a full refund.  SUF ¶¶ 11, 12.  On May 15, Boston College announced its second summer session would also be virtual; students had until after classes began on June 29 to drop courses and receive a full refund.  SUF ¶¶ 14, 15.  Plaintiffs Rodrigues and Talbott nevertheless chose to remain enrolled in classes for the summer terms—Rodrigues for the second term and Talbott for the first.  SUF ¶¶ 13, 16.

### 2.    Fall 2020 Session

**Undergraduate (Rodrigues)**.  On May 19, University President William P. Leahy, S.J. ("Father Leahy") sent a letter to the entire Boston College community expressing hope that the University would open for on-campus classes for Fall 2020 while at the same time stating that University officials' "review and analyses w[ould] continue in the coming months."  SUF ¶ 17. On June 15, Michael Lochhead, the University's Executive Vice President, and David Quigley, the Provost and Dean of Faculties, wrote to the community "to provide an update on planning efforts related to the fall reopening of campus . . . ."  SUF ¶ 18.  The email reiterated that the University did not "have all of the details finalized" and that they would "provide a weekly Monday afternoon update via email from [then] through August."  *Id.*  Lochhead and Quigley then wrote to the community on July 6, announcing that "students can expect courses taught in a range of modalities," including in-person and online, for Fall 2020.  SUF ¶ 21; *see also* SUF ¶ 22.

On August 7, Boston College's Registrar emailed all students and explained that it had "completed updating course formats and classroom assignments to align with required protocols related to COVID-19," and "that the unpredictable nature of COVID-19 could require the University to make additional adjustments to academic schedules in the weeks ahead." SUF ¶ 23. Students could view their class modalities in the course registration portal. *Id.*

Consistent with these communications, Boston College welcomed students back to campus for the Fall 2020 semester. SUF ¶ 24. Rodrigues lived on campus and her undergraduate coursework consisted of a "range of modalities"—three classes were in-person, one was remote, and one was hybrid. SUF ¶ 25.

**School of Social Work (Talbott)**. While the previous communications were sent to the entire Boston College community, Talbott's School of Social Work received a specific, definitive message from Dean Gautam Yadama on June 24, 2020: "The University has specified a clear set of guidelines for its reopening, while allowing each school to operationalize its own plans," and after "weighing factors unique to the School of Social Work," "we concluded that an online MSW program for the fall semester will serve our MSW students' best interests at this time." SUF ¶ 19. Less than a week later, Teresa Schirmer, the School of Social Work's Associate Dean of Student Experience, sent an email to all School of Social Work students reiterating that it had "concluded that online MSW classes for the fall semester will serve our MSW students' best interests at this time," and provided further information about how remote coursework would proceed. SUF ¶ 20. This communication also explained that students would be allowed on campus to use school resources if they chose to do so. *Id.* Consistent with these communications, Talbott's Fall 2020 classes were remote. SUF ¶ 26.

**Options To Withdraw Or Take Leave And Receive Full Refund**.  The Fall 2020 Semester started on August 31, and undergraduates had until August 28 to withdraw or take a leave of absence to receive a full refund of tuition and fees.  SUF ¶¶ 27, 28.  They could also switch from online to in-person courses (or vice versa) during the drop-add period until September 11.  *See* SUF ¶ 28.  Graduate students, including in the School of Social Work, had until September 11 to withdraw or take a leave of absence to receive a full refund of tuition and fees.  SUF ¶ 29.  Both Plaintiffs chose to remain enrolled in their respective programs for Fall 2020 and thus declined the option to receive a refund.  *See* SUF ¶ 30.

       3.     **Spring 2021 Session**

**Undergraduate (Rodrigues)**.  On October 26, 2020, Lochhead and Quigley wrote to the community that they "expect[ed]" to "once again offer a mix of in-person, hybrid, and online courses" for Spring 2021.  SUF ¶ 32.  That semester, three of Rodrigues's classes were in person and two were remote.  SUF ¶ 33.  She also continued to live on campus.  SUF ¶ 24.

**School of Social Work (Talbott)**.  On October 19, 2020, the School of Social Work informed its students that all Spring 2021 classes would be remote.  *See* SUF ¶ 31 (in light of ongoing effects of COVID-19 pandemic and other factors, "[the school] came to the conclusion that the most consistent plan for learning would be to continue online classes at BC SSW for the spring 2021 semester").

**Options To Withdraw Or Take Leave And Receive Full Refund**.  The Spring 2021 Semester started on January 28 and undergraduates had until January 27 to withdraw or take leave to receive a full tuition and fee refund.  SUF ¶¶ 35, 36.  They could also switch from online to in-person courses (or vice versa) during the drop-add period until February 5.  *See* SUF ¶ 36. Graduate students like Talbott had until February 5 to withdraw or take leave to receive a full

tuition and fee refund.  SUF ¶ 37.  Both Plaintiffs chose to remain enrolled in their respective

programs for Spring 2021 and thus declined the option to receive a refund.  *See* SUF ¶ 38.

## PROCEDURAL HISTORY

### A.    Plaintiffs' Complaint.

Rodrigues filed this putative class action on September 8, 2020, asserting claims for

breach of contract and unjust enrichment and seeking a tuition refund.  ECF No. 1 at ¶¶ 53-67.

On November 12, 2020, Boston College moved to dismiss the complaint, arguing, *inter alia*, that

Rodrigues lacked standing because she had not paid tuition and thus suffered no redressable

injury.  ECF No. 19 at 14-15.  Rodrigues filed an Amended Complaint on December 15, 2020,

adding Talbott as a named plaintiff.  ECF No. 23 at ¶ 25.  On April 15, 2021, this Court denied

Boston College's motion to dismiss the Amended Complaint.  ECF No. 32.

"Plaintiffs allege that BC breached its contractual obligations to its students and was

unjustly enriched when it continued to require students to pay full tuition prices after the change

to remote instruction."  ECF No. 96 at 2.  "They acknowledge that the transition was warranted

but insist that BC should reimburse students, at least in part, for the diminished value of an

online educational experience."  *Id.*  "[P]laintiffs [sought] relief related to the 2020 Spring,

Summer and Fall terms and the 2021 Spring term."  *Id.*  Rodrigues is only seeking a refund of

fees related to on-campus services, such as dining fees, a campus health fee, and a student

activity fee.  SUF ¶¶ 2, 3.  Talbott, in contrast, seeks a refund of tuition and fees.  SUF ¶ 4.

### B.    Court's Grant Of Partial Summary Judgment As To Spring 2020 Claims.

Section 80 of the Outside Sections of the Commonwealth's budget, enacted on August 9,

2023, foreclosed claims against universities "aris[ing] out of or in connection with tuition or fees

paid to the institution of higher education for the spring academic term of 2020" based on the

university's transition to remote learning.  *See* Mass. St, c. 28 § 80(b)-(c).  Boston College

moved for partial summary judgment as to Plaintiffs' Spring 2020 claims, and this Court granted that motion, rejecting Plaintiffs' argument that Section 80 was unconstitutionally retroactive. ECF No. 96 at 5-13.  Boston College's motion explained that "it will later move for summary judgment as to the post-Spring, 2020, claims."  *Id.* at 3 n.1.

> **C.  First Circuit's *Dutra* Decision.**

The First Circuit then took up the question of Section 80's retroactivity in *Dutra v. Trustees of Boston Univ.*, a case nearly identical to this one as to the Spring of 2020, and agreed with this Court, holding that because Section 80's "retroactive application does not violate due process, Law 80 bars this action."  96 F.4th 15, 17 (1st Cir. 2024).

The *Dutra* plaintiffs filed a petition for rehearing, asking the court of appeals to rehear the case or certify the question of Section 80's constitutionality to the Massachusetts Supreme Judicial Court.  *See* Appellant's Pet. for Panel Reh'g and Reh'g En Banc, *Dutra v. Trs. of Boston Univ.*, No. 23-01385 (1st Cir. Mar. 26, 2024).  The Plaintiffs in this action filed a brief as amici curiae in support of the *Dutra* plaintiffs' petition.  Amici Curiae Br. of Scott Schmidhauser et al. in Supp. of Pls.-Appellants' Pet. for Panel Reh'g and Reh'g en Banc, *Dutra v. Trs. of Boston Univ.*, No. 23-01385 (1st Cir. Apr. 2, 2024).  The First Circuit denied the petition on May 22, 2024.  Order, *Dutra v. Trs. of Boston Univ.*, No. 23-01385 (1st Cir. May 22, 2024).

> **D.  Plaintiffs' Attempt To Relitigate This Case In Massachusetts State Court.**

On June 14, 2024, Plaintiffs—along with the plaintiff in a similar action against Tufts University—filed a declaratory judgment complaint in Massachusetts state court against Tufts and Boston College.  Complaint, *Schmidhauser et al., v. Boston College and Tufts University*, No. 2484CV01591 (Mass. Super. Ct. June 14, 2024).  The complaint's only claim for relief is a declaration that Section 80 is unconstitutionally retroactive, *id.* ¶¶ 27-63—precisely the argument this Court (not to mention the First Circuit) has already rejected.

- 9 -

## APPLICABLE LEGAL STANDARDS

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the record shows that an individual named plaintiff cannot prove her claims, a court may grant summary judgment before deciding whether to certify a class. *Danny B. ex. Rel. Elliott v. Raimondo*, 784 F.3d 825, 838 (1st Cir. 2015) (court may "defer the issue of class certification until after disposing of summary judgment motions").

Plaintiffs allege that various communications, including "brochures, factbooks, emails to prospective students, and representations [Boston College] made on its websites," SUF ¶ 6, form a contract between Boston College and them, and that Boston College breached this contract by providing some (Rodrigues) or all (Talbott) classes remotely during the Summer 2020, Fall 2020, and Spring 2021 sessions. Courts have recognized that express or implied contract claims could be brought based on such materials, *see Omori v. Brandeis Univ.*, 533 F. Supp. 3d 49, 54-55 (D. Mass. 2021), and in interpreting the relevant contract terms have "employ[ed] the standard of reasonable expectation—what meaning the party making the manifestation, the university, should reasonably expect the other party to give it," *id.* at 55 (quotation omitted); *see, e.g.*, *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 34 (1st Cir. 2007) (similar). It does not matter "what plaintiff's expectations of the proceeding were" if those expectations were not reasonable—it is "an objective reasonableness standard." *Walker v. President and Fellows of Harvard Coll.*, 82 F. Supp. 3d 524, 530 (D. Mass. 2014), *aff'd*, 840 F.3d 57 (1st Cir. 2016) (emphasis removed). The ultimate question is whether, in light of the communications between the University and Plaintiffs, there could have been "a reasonable expectation that plaintiffs paid tuition in anticipation of [Summer 2020, Fall 2020, and Spring 2021] classes meeting in-person somewhere on campus." *Omori v. Brandeis Univ.*, 635 F. Supp. 3d 47, 55 (D. Mass. 2022).

- 10 -

Plaintiffs' unjust enrichment claims likewise turn on their reasonable expectations. "A plaintiff asserting a claim for unjust enrichment must establish that the defendant received a benefit and that, *based on the expectations of the parties*, such a benefit was unjust." *Gabriel v. Superstation Media, Inc.*, 2015 WL 1648723, at *7 (D. Mass. Apr. 14, 2015) (emphasis added); *see also Metro. Life. Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013) (unjust enrichment turns on parties' "reasonable expectations").

## ARGUMENT

Courts in this district and others have struggled with (and disagreed about) the validity of contract and unjust enrichment claims predicated on universities' decisions in Spring 2020 to transition to remote learning. *Compare Barkhordar v. President & Fellows of Harvard Coll.*, 544 F. Supp. 3d 203 (D. Mass. 2021), *and Chong v. Ne. Univ.*, 2021 WL 1857341 (D. Mass. May 10, 2021), *with In re Bos. Univ. COVID-19 Refund Litig.*, 511 F. Supp. 3d 20 (D. Mass. 2021) *and Omori*, 533 F. Supp. 3d 49. But there is no controversy about claims based on universities' decisions to use remote learning *after* Spring 2020, when students were aware from their Spring 2020 experiences that universities could and would use remote learning as part of their effort to combat the continuing effects of the COVID-19 pandemic. *See, e.g.¸ Barkhordar*, 544 F. Supp. 3d at 216 (dismissing claims for Fall 2020); *In re Univ. of S. California Tuition & Fees COVID-19 Refund Litig.*, 2021 WL 3560783, at *6 (C.D. Cal. Aug. 6, 2021) (dismissing claims for "Fall 2020 semester and beyond").

Indeed, the only Court in this District to have considered the question rejected it out of hand. *See Barkhordar*, 544 F. Supp. 3d at 216. The plaintiff there alleged that he was "entitled to partial reimbursement for the tuition and fees he paid for the Fall 2020 semester at Harvard Law School." *Id.* The Court explained that Harvard Law School students had received a letter "advising them of Harvard Law School's decision that the Fall 2020 semester would be remote-

- 11 -

only." *Id.*  The letter also stated that because "an online learning experience may not be optimal for all of you," Harvard Law School would "offer an additional deferral period for our newly admitted JD and L.L.M, students [and] [w]e will also extend from June 15 to June 19 the deadline for returning students to opt for a fall-semester or full-year leave during Academic Year 2020-2021." *Id.* (alterations in original).  And the Court explained that the plaintiff "did not take a fall semester or full-year leave and, instead, re-enrolled for the Fall 2020 semester aware tuition would not be reduced, and that instruction would be online." *Id.*  The Court concluded: "By enrolling, Barkhordar accepted the terms of the contract for the Fall 2020 semester, including the terms that instruction would be online only . . . ; he has no reasonable expectation otherwise. As a result, he is not entitled to reimbursement of the tuition and fees paid for Fall 2020 as he has not plausibly stated a claim for breach of contract, unjust enrichment, or conversion and his claims for Fall 2020 are dismissed."  *Id.*; *see also Barkhordar v. President & Fellows of Harvard Coll.*, 2022 WL 605820, at *1, n.1 (D. Mass. Mar. 1, 2022) (rejecting motion for leave to amend complaint as to Fall 2020 and Spring 2021 semesters).

For the reasons explained below, exactly the same analysis applies here and requires summary judgment for Boston College as to Plaintiffs' remaining, post-Spring-2020 claims.  But if the Court disagrees, it should at least grant Boston College a final, preclusive judgment as to Spring 2020 under Federal Rule of Civil Procedure 54(b) to avoid any possibility of wasteful, duplicative litigation in state court as to those claims, which this Court has already rejected.

# I.   The Court Should Grant Boston College Summary Judgment As To Plaintiffs' Remaining Contract And Unjust Enrichment Claims.

## A.   Remaining Contract Claims.

As explained earlier, and as this Court's partial summary judgment decision emphasized, Boston College's 2019-2020 Catalog reserved the right "in its *sole* judgment to make changes of

*any* nature . . . , [including] the rescheduling of classes . . . , cancelling of scheduled classes and other academic activities, and requiring or affording alternatives for scheduled classes or other academic activities."  ECF No. 96 at 9 (quoting the 2019-2020 Catalog) (emphases, alterations, and omissions added by Court).  The 2020-2021 Catalog included a materially identical provision.  SUF ¶ 8.  This explicit reservation of rights "suggests that students were on notice that the nature of their instruction could vary," and that Boston College "maintained sole discretion to suspend in-person instruction if it deems it necessary."  ECF No. 96 at 10.  The Court in *Chong* granted Northeastern University summary judgment based on a materially identical reservation of rights.  *See Chong*, 2021 WL 1857341, at *5.  Boston College's reservation of rights—especially combined with Plaintiffs' (and everyone else's) Spring 2020 experience demonstrating that in-person classes were not guaranteed—by itself suffices to reject Plaintiffs' post-Spring 2020 claims.

But in the end, the Court need not rely solely on Boston College's reservation of rights to assess the plaintiffs' contract claims, because Boston College repeatedly and clearly communicated in advance with its students concerning what learning modalities in future semesters would be.  In light of the communications received from Boston College, neither Plaintiff could possibly have had any reasonable expectation that classes would be fully (as to Rodrigues) or even partially (as to Talbott) in-person.

### 1.  Summer 2020

Both Plaintiffs allege that Boston College breached their reasonable expectations of in-person education for the Summer 2020 session.  That claim is easily rejected on the undisputed facts.  As explained above, students were notified that the first session would be remote on April 15, 2020, and that their second session would be remote on May 15, 2020.  SUF ¶¶ 11, 14. Students had until after classes began on May 13 to drop courses and receive a full refund for the

first session, and until after classes began on June 29 to do so for the second session.  SUF ¶¶ 12, 15.  Yet Plaintiffs did not take advantage of either option to receive a refund after being told that summer classes would be remote, and instead enrolled in the summer sessions (Rodrigues for the second and Talbott for the first).  SUF ¶¶ 13, 16.  Their claim for Summer 2020 is frivolous.

        2.    **Fall 2020**

Each Plaintiff's Fall 2020 claims likewise fail.

Rodrigues (Undergraduate).  In the Fall 2020 semester, Rodrigues took three in-person classes, one remote class, and one hybrid class.  SUF ¶ 25.  Rodrigues concedes that she seeks only a refund of non-tuition fees.  SUF ¶ 2.  That claim turns entirely on Rodrigues's argument that she was unable to use campus facilities and services for which she paid fees.  *Id.*  But Rodrigues lived on campus—most of Rodrigues's classes were in fact in person in Fall 2020—so her claims fail at the threshold.

In any event, Rodrigues could have had no reasonable expectation that all of her classes would be in person in Fall 2020.  On July 6, Lochhead and Quigley wrote to the community and explained that "students can expect courses taught in a range of modalities," including in-person and online, for Fall 2020.  SUF ¶ 21.  Rodrigues had until August 28 to withdraw or take a leave of absence to receive a full refund of her fees, SUF ¶ 28, but she did not do so.  And Rodrigues received exactly what was promised—her three in-person classes, one remote class, and one hybrid class, SUF ¶ 25, indeed consisted of a "range of modalities."

Talbott (School of Social Work).  The School of Social Work's classes were fully remote in Fall 2020.  But Talbott could have had no reasonable expectation otherwise.  School of Social Work Dean Yadama sent a letter to the School of Social Work community on June 24, 2020, explaining the School's decision to conduct all classes remotely in Spring 2020.  SUF ¶ 19.  The School's Associate Dean Schirmer confirmed that decision the following week in an update

email to the entire School of Social Work community, explaining that the School had "concluded that online MSW classes for the fall semester will serve our MSW students' best interests at this time," and provided further information about how remote coursework would proceed.  SUF ¶ 20.  Talbott had until September 11 to withdraw or take leave to receive a full tuition and fee refund.  SUF ¶ 29.  But she did not—instead, she enrolled and remained in her Fall 2020 classes, despite knowing by June that those classes would be fully remote.  If Talbott had an expectation of in-person instruction in Fall 2020, that expectation was decidedly unreasonable in light of the School of Social Work's very clear communications well in advance of the withdrawal deadline.

3.   **Spring 2021**

Plaintiffs' Spring 2021 claims fail for exactly the same reasons.

Rodrigues (Undergraduate).  Students were told in a university-wide communication on October 26, 2020, well in advance of the date by which they could seek a refund, that the university "expect[ed]" to "once again offer a mix of in-person, hybrid, and online courses" during the Spring 2021 semester.  SUF ¶ 32.  Consistent with that promise, Rodrigues took three in-person and two remote classes in Spring 2021.  SUF ¶ 33.  She could have withdrawn or taken leave by January 27, 2021 for a full refund of her fees, but she did not.  SUF ¶ 36.  The fact that she was on campus for Spring 2021 means her claim for fees fails at threshold, *see supra* at 7, and she could have had no reasonable expectation of entirely in-person learning in any event.

Talbott (School of Social Work).  The School of Social Work informed Talbott on October 19, 2020 that all Spring 2021 classes would be remote.  SUF ¶¶ 31, 34.  Talbott had until February 5, 2021 to withdraw and receive a full refund of her tuition and fees for Spring 2021, but again declined to do so.  SUF ¶ 37.  Talbott again could not possibly have had a reasonable expectation of in-person learning in Spring 2021, so her claim fails.

**B.      Remaining Unjust Enrichment Claims.**

Plaintiffs' unjust enrichment claims likewise fail, for two reasons.

*First*, Plaintiffs' unjust enrichment claims, like their contract claims, turn on their

"reasonable expectations."  *Metro. Life. Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013).  For the

reasons explained above—in light of Boston College's communications with Plaintiffs, and also

in light of its reservation of rights—Rodrigues could not have had any reasonable expectation

that all of her classes would be in person, and Talbott could not have had any reasonable

expectation that any of her classes would be in person.

*Second*, no claim for unjust enrichment lies where, as here, a contractual relationship

"defines the obligations of the parties."  *Id.* at 641 (quotation omitted).  Unjust enrichment is a

claim grounded in equity and thus is "displac[ed]" when a "contract"—express or implied—

"defines the obligations of the parties" and provides an adequate remedy at law.  *SiOnyx, LLC v.*

*Hamamatsu Photonics K.K.*, 332 F. Supp. 3d 446, 472 (D. Mass. 2018) (quotation omitted).

These principles apply regardless of whether Plaintiffs prevail on their breach of contract claims:

"It is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim

for unjust enrichment."  *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017).

Plaintiffs assert that a contract governs the parties' relationship.  *See supra* at 3.  Thus, as

this Court explained in the *Brandeis* case, because the parties did not "dispute the existence of a

contract that governs the relevant aspects of their university-student relationship here," the

"plaintiffs have an adequate remedy at law" regardless of whether plaintiffs prevail on their

contract claim, and "the University's motion for summary judgment on the claim for unjust

enrichment will be allowed."  *Omori v. Brandeis*, 635 F. Supp. 3d 47, 58 (D. Mass. 2022);

*accord Chong v. Ne. Univ.*, 494 F. Supp. 3d 24, 30 (D. Mass. 2020); *Barkhordar v. President &*

*Fellows of Harvard Coll.*, 544 F. Supp. 3d 203, 215 (D. Mass. 2021); *see also Hutchinson v.*

- 16 -

*Univ. of Saint Joseph*, 2022 WL 19339, at \*5 (D. Conn. Jan. 3, 2022); *Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 199 (S.D.N.Y. 2021), *aff'd*, 88 F.4th 204 (2d Cir. 2023); *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 430 (S.D.N.Y. 2021), *aff'd sub nom. Tapinekis v. Pace Univ.*, 2024 WL 2764146 (2d Cir. May 30, 2024). That rule applies equally here and requires judgment for Boston College.

## II.   If The Court Does Not Grant Boston College Summary Judgment, It Should Grant Final Judgment As To The Spring 2020 Claims Under Rule 54(b).

As the undisputed record above demonstrates, summary judgment is required as to all Plaintiffs' claims. But if the Court disagrees, it should, at a minimum, enter a Rule 54(b) judgment as to Plaintiffs' Spring 2020 claims. The Court already granted partial summary judgment as to those claims, ECF No. 96, but Plaintiffs have now filed a state court action seeking to relitigate exactly the same issue they lost in this Court—*viz.*, whether Section 80 is unconstitutionally retroactive. While this Court's partial summary judgment order likely already has sufficient issue-preclusive effect to foreclose that claim, the Court can resolve any doubt—and avoid wasteful relitigation of an already-litigated claim—by entering a final judgment as to the Spring 2020 claims.

Under Federal Rule of Civil Procedure 54(b), "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . if the court expressly determines that there is no just reason for delay." Rule 54(b) was adopted to avoid the "injustice" that may arise from "delaying judgment on a distinctly separate claim pending adjudication" of the remainder of the case. *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015) (quoting Fed. R. Civ. P. 54(b) advisory committee's note to 1946 amendment) (cleaned up). To enter a judgment under Rule 54(b), this Court must determine (1) "that it is dealing with a 'final judgment'"; and (2) "whether there is any just

reason for delay." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980).  Both preconditions are satisfied here.

### A.      The Court's Ruling As To The Spring 2020 Claims Is Final.

A final ruling is one that "disposes completely either of all claims against a given defendant or"—more relevant here—"of some discrete substantive claim or set of claims against the defendants generally."  *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 580 (1st Cir. 1994).  That standard is readily satisfied here.  Boston College's partial summary judgment motion was limited to "discrete substantive claim[s]," *id.*—"While plaintiffs seek relief related to the 2020 Spring, Summer and Fall terms and the 2021 Spring term, defendant's motion addresses only plaintiffs' claims relative to the Spring, 2020 semester."  ECF No. 96 at 2-3.  This Court concluded that "partial summary judgment in favor of defendant is warranted," *id.* at 2, thus definitively resolving "plaintiffs' claims relative to the Spring, 2020 semester," *id.* at 3.  The Court's grant of partial summary judgment as to Plaintiffs' 2020 claims was final.

### B.      There Is No Just Reason To Delay Entry Of Final Judgment As To The Spring 2020 Claims If The Court Does Not Grant Boston College Summary Judgment As To All Remaining Claims.

"[T]he court must [next] determine if there is 'no just reason for delay' in entering judgment by reviewing the 'litigation as a whole, and [] weighing [] all factors relevant to the desirability of relaxing the usual prohibition against piecemeal appellate review in the particular circumstances.'"  *Gibson Found., Inc. v. Norris*, 2022 WL 16636247, at *2 (D. Mass. Aug. 26, 2022) (quoting *Spiegel v. Trs. of Tufts Coll.*, 843 F.2d 38, 43 (1st Cir. 1988)).  Courts in this district consider the following factors:  "(1) [T]he relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or

counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." *Id.* (factors first articulated in *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975)); *see also Darr v. Muratore*, 8 F.3d 854, 862 n.10 (1st Cir. 1993) (citing *Allis-Chalmers*).  The relevant factors[2] weigh heavily in favor of entering final judgment here.

**Factors 1, 2, and 3.**  The Spring 2020 claims are distinct from the post-Spring 2020 claims, both legally and factually—there is no "significant imbrication between the jettisoned claims and the remaining claims."  *Maldonado-Denis*, 23 F.3d at 580.  The Spring 2020 claims are controlled entirely by Section 80, *see* ECF No. 96, whereas the remaining claims are controlled by the communications between Boston College and its students that form part of the alleged implied contract between the two, *see supra* Part I.  For the same reason, this Court's adjudication of the remaining claims will not moot any appeal of a judgment as to the Spring 2020 claims—such an appeal is hopeless in light of *Dutra*, but if Plaintiffs did decide to appeal, any appeal of the Spring 2020 judgment would involve the constitutionality of Section 80 (which *Dutra* already resolved) whereas an appeal of a judgment as to the remaining claims would concern the arguments set forth in Part I of this brief, none of which relates in any way to Section 80.  Nor is there any possibility that the First Circuit will be required to consider the same issue twice—again, not only has the constitutionality of Section 80 already been decided in *Dutra*, but this question is at issue only as to the Spring 2020 claims, not the remaining claims.

---

[2] Factor 4 is irrelevant because there is no claim or counterclaim that could result in an offset of any judgment.

    **Factor 5.**  The miscellaneous factor strongly favors granting final judgment as to the Spring 2020 claims because if the Court does not grant full summary judgment as to all Plaintiffs' remaining claims, then the Court's partial judgment as to their Spring 2020 claims—and this Court's holding that Section 80 survives constitutional scrutiny—would not be fully final, and thus may not preclude the duplicative litigation that Plaintiffs have inexplicably decided to pursue in Massachusetts state court.  There is a good argument that the Court's partial summary judgment grant would be considered sufficiently final for issue preclusion purposes, *see Free Speech Coalition, Inc. v. AG of the United States*, 677 F.3d 519, 541 (3d Cir. 2012) ("[F]inality for purposes of issue preclusion is a more pliant concept than it would be in other contexts, and that finality may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." (quoting *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991) (cleaned up)), but the issue is not free from doubt.  It would be inequitable to require Boston College to litigate an issue in another court that it has already litigated and won in this Court—in a decision that *Dutra* ratified—and a Rule 54(b) judgment as to the Spring 2020 claims (if not a final judgment as to all Plaintiffs' claims, *see supra* Part I) would help foreclose that result.

**CONCLUSION**

    For the forgoing reasons, Boston College respectfully requests the Court to grant its Motion for Summary Judgment as to Plaintiffs' remaining claims.  If the Court does not grant summary judgment as to those claims, it should enter a final judgment as to Plaintiffs' Spring 2020 claims under Rule 54(b).

Dated: July 11, 2024                        Respectfully submitted,


                                            /s/ Anton Metlitsky
                                            Anton Metlitsky (*pro hac vice*)
                                            ametlitsky@omm.com
                                            O'MELVENY & MYERS LLP
                                            1301 Avenue of the Americas
                                            Suite 1700
                                            New York, NY 10019
                                            Telephone: (212) 326-2000
                                            Facsimile: (212) 326-2061

                                            Matthew Powers (*pro hac vice*)
                                            mpowers@omm.com
                                            O'Melveny & Myers LLP
                                            Two Embarcadero Center
                                            28th Floor
                                            San Francisco, CA 94111
                                            Telephone: (415) 984-8700
                                            Facsimile: (415) 984-8701

                                            Jen Cardelús (BBO #176998)
                                            jcardelus@omm.com
                                            O'Melveny & Myers LLP
                                            400 South Hope Street
                                            Los Angeles, CA 90071
                                            Telephone: (213) 430-6000
                                            Facsimile: (213) 430-6407

                                            *Attorneys for Defendant*
                                            *Trustees of Boston College*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on July 11, 2024.

*/s/ Anton Metlitsky*
Anton Metlitsky (*pro hac vice*)
